UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHAWN GARBER,

Plaintiff,

      -against-

UNITED HEALTHCARE CORPORATION
n/k/a UNITED HEALTH GROUP, UNITED
HEALTHCARE INSURANCE COMPANY,
UNITED HEALTHCARE INSURANCE
COMPANY OF NEW YORK, INC., UNITED
HEALTHCARE SERVICES, INC., and
UNITED HEALTHCARE SERVICE
CORPORATION,

Defendants.
-----------------------------------------------------------X

**ORDER**

15-CV-1638 (SJF)(GRB)

**FILED**
**CLERK**

5/2/2016 1:51 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

FEUERSTEIN, J.

      Plaintiff Shawn Garber ("Plaintiff") originally filed this action in the Supreme Court of

the State of New York, County of Nassau against defendants United Healthcare Corporation,

now known as United Health Group, United Healthcare Insurance Company, United Healthcare

Insurance Company of New York, Inc., United Healthcare Services, Inc., and United Healthcare

Service Corporation (collectively, "United"). Plaintiff, a medical doctor, alleges that United

underpaid him for services he provided to participants in United's health insurance plans, and

seeks unspecified damages under state-law breach of contract and unjust enrichment theories.

      United removed the action to this Court, asserting that Plaintiff's claims are preempted by

the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

Plaintiff then moved to remand the action to state court, arguing that his claims are not

preempted and this Court therefore lacks subject matter jurisdiction. For the reasons set forth

below, the Court finds that Plaintiff's claims against United are not preempted by ERISA. Accordingly, Plaintiff's motion to remand the action to state court is granted.

## I.      BACKGROUND

### A.      Factual Background[1]

Plaintiff is a bariatric surgeon who performs, among other things, a procedure involving "an adjustment of gastric band diameter via subcutaneous port by injection or aspiration of saline" (the "Gastric Band Procedure"). (Compl. ¶¶ 3, 27). Plaintiff is not a "participating provider" in United's health insurance plans. (*Id.* ¶¶ 14-15). Plaintiff's patients who are insured through United are responsible for paying Plaintiff the full cost of his services. (*Id.* ¶ 17). If the patient has a United insurance plan that covers out-of-network services of the type that Plaintiff offers, that patient may either (i) pay Plaintiff in full and request partial reimbursement from United, or (ii) assign the right to reimbursement to Plaintiff, allowing Plaintiff to collect a portion of his fee from United directly, and then pay Plaintiff the balance of his fee. (*Id.* ¶¶ 18-19). According to Plaintiff, he "typically obtains assignments … through which he is paid directly by United." (*Id.* ¶ 54).

United's health insurance plans "vary from plan to plan," but usually provide for reimbursement at a rate of between sixty percent (60%) and ninety percent (90%) of the "usual, customary, and reasonable … rate for the same services provided by physicians in the same community as the out-of-network physician" ("UCR"). (*Id.* ¶ 20). United utilizes a database maintained by Fair Health, Inc., an independent, non-profit corporation (the "Fair Database"), to determine the UCR for various medical procedures, including the Gastric Band Procedure. (*Id.*

---

[1] The following facts are taken from Plaintiff's state court complaint, attached as Exhibit A to United's Notice of Removal. (Dkt. 1-2). The Court assumes these facts to be true for the purpose of deciding this motion.

¶¶ 21-28, 30-31).  The Fair Database is a "database of billions of healthcare charges …

organize[d] by procedure code, geographic area and date of service."  (*Id.* ¶ 22).  The Fair

Database was established in October 2009 "as part of the settlement of an investigation by then

New York State Attorney General, Andrew Cuomo, into the health insurance industry's methods

for determining out-of-network reimbursement."  (*Id.* ¶ 23).

Plaintiff, who performs more Gastric Band Procedures than any other bariatric surgeon in

the Long Island region, charges approximately two thousand dollars ($2,000) per Gastric Band

Procedure.  (*Id.* ¶¶ 28-30).  "[I]n-network United providers were receiving … [more than] $900"

for the Gastric Band Procedure.  (*Id.* ¶ 33).  However, at some point in 2014, the Fair Database

UCR for the Gastric Band Procedure in the Long Island region "declined all the way to $400."

(*Id.* ¶¶ 28-31).  Plaintiff was advised by United and Fair Health, Inc. that his fee was an "outlier,"

and they "refused to have a meaningful discussion with him about their methodology" or to

"provide … any policies to document how or why [they] considered or classified [Plaintiff's]

charges as outliers."  (*Id.* ¶¶ 35-36).  According to Plaintiff, "United is falsely representing to the

healthcare community in general that the [UCR] for [the Gastric Band Procedure] on Long Island

is $400 [when,] [i]n fact, it is far more than that."  (*Id.* ¶ 37).

### B.    Procedural History

On March 2, 2015, Plaintiff filed a complaint against United in the Supreme Court of the

State of New York, County of Nassau, which asserts four (4) state law causes of action against

United: (1) breach of express contracts between Plaintiff and United; (2) breach of implied-in-

fact contracts between Plaintiff and United; (3) breach of express and/or implied-in-fact contracts

between United and Plaintiff's patients, of which Plaintiff was an assignee; and (4) unjust

enrichment.  (*See id.* at ¶¶ 38-66).  On March 27, 2015, United removed the action to this Court,

contending that Plaintiff "seeks payment of benefits under several employee welfare benefit plans governed by [ERISA]," and that Plaintiff's claims are therefore preempted by ERISA. (Notice of Removal (Dkt. 1) at ¶ 6). On July 31, 2015, Plaintiff moved to remand this action to state court, arguing that his state-law claims are not preempted by ERISA and, as such, this Court lacks subject matter jurisdiction. (Memorandum of Law in Support of Plaintiff's Motion to Remand, dated July 31, 2015 ("Pl. Mem.") (Dkt. 24-1) at 6-13).

## II.     DISCUSSION

### A.     Legal Standard

A defendant sued in state court may remove a civil action to federal court if "the district courts of the United States have original jurisdiction" over the action. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law," and a defendant's assertion of a federal-law defense does not convert a state-law claim into a federal claim. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). However, an exception to this general rule exists where "a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). In other words, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64. The Supreme Court has held that ERISA completely preempts many state law causes of action implicating employee benefit plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.").

4

On a motion to remand a case back to state court, "the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358(SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)) (additional quotations omitted). If removal is based upon ERISA preemption, "[t]he defendant bears the burden of establishing that the case is preempted by ERISA and properly removed to federal court." *Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 296 (S.D.N.Y. 2014) (citing *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994)).

Under ERISA Section 502(a), the statute's civil enforcement mechanism, a participant or beneficiary of an ERISA-governed plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Congress intended this enforcement provision to be comprehensive and exclusive. *See Davila*, 542 U.S. at 209. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* This means that plaintiffs may not "'avoid[ ] removal' to federal court 'by declining to plead necessary federal questions.'" *Arditi v. Lighthouse Intern.*, 676 F.3d 294, 298-99 (2d Cir. 2012) (quoting *Romano v. Kazacos*, 609 F. 3d 512, 519 (2d Cir. 2010)).

In *Davila*, the Supreme Court established a two-pronged test to determine whether a state law claim is preempted by ERISA. A cause of action is preempted if (1) the plaintiff, "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no

other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. The Second Circuit divides the first prong of the *Davila* test into two subparts: (a) "whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B)," and (b) "whether the *actual claim* that plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore Med. Ctr. V. Teamsters Local 272*, 642 F. 3d 321, 328 (2d Cir. 2011) (emphasis in original). "The *Davila* test is conjunctive – that is, a state-law claim is preempted only if both prongs of the test are satisfied." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna U.S. Healthcare*, No. 15-cv-2007, 2015 WL 2183900, at *3 (S.D.N.Y. May 11, 2015) (citing *Montefiore*, 642 F.3d at 328).

### B. Application

Plaintiff alleges that he was underpaid an unspecified amount of money in connection with an unspecified number of Gastric Band Procedures performed on patients who are insured through unspecified United health insurance plans. Though vague, Plaintiff does not dispute United's contention that at least some of the Gastric Band Procedures for which United allegedly underpaid him were performed on patients who are insured through ERISA-governed health insurance plans. Indeed, Plaintiff alternatively moves for leave to amend his complaint to include ERISA claims. It is therefore assumed that at least some of the health insurance plans implicated in this dispute are within the scope of ERISA.

#### 1. *Davila* Prong One, Step One

Plaintiff claims that his patients have validly assigned to him the right to seek and receive partial reimbursement from United under their insurance plans. (*See* Compl. ¶¶ 19, 53-54; Pl. Mem. at 13-16). Healthcare providers who receive valid assignments of the right to reimbursement from their patients have standing to sue under ERISA. *See Simon v. General*

6

*Elec. Co.*, 263 F.3d 176, 177-78 (2d Cir. 2001); *The Plastic Surgery Group, P.C. v. United*

*Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 465 (E.D.N.Y. 2014); *Neuroaxis*

*Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y.*, No. 11-cv-8517, 2012 WL 4840807, at

*3 (S.D.N.Y. Oct. 4, 2012).  Accordingly, Plaintiff is the type of party who can bring an ERISA

claim, and Prong One, Step One of the *Davila / Montefiore* preemption test is satisfied.

### 2. *Davila* Prong One, Step Two

The Court next considers whether Plaintiff's claims might be considered colorable claims

for benefits under ERISA § 502(a)(1)(B).  *Montefiore*, 642 F.3d at 330.  The Second Circuit

distinguishes between claims involving the "right to payment" and claims involving the proper

"amount of payment."  *See id*. at 331.  Right-to-payment claims "implicate coverage and benefits

established by the terms of the ERISA benefit plan" and can be brought under § 502(a)(1)(B).

*Id*.  Generally, a plaintiff's claims should be placed in the right-to-payment category where "the

meaning of the plan language is disputed and requires the Court's interpretation."  *Enigma*, 994

F. Supp. 2d at 298 (quoting *Neuroaxis*, 2012 WL 4840807, at *4); *see also Plastic Surgery*

*Group*, 64 F. Supp. 3d at 467 (claims implicate right to payment where "there is no question that

the Court will need to interpret the language of the Plan to resolve this dispute"); *Olchovy v.*

*Michelin N. Am., Inc.*, No. 11-cv-1733, 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011),

*report and recommendation adopted sub nom. Olchovy v. Michelin Northamerica, Inc.*, No. 11-

cv-1733, 2011 WL 4916564 (E.D.N.Y. Oct. 17, 2011) ("*Montefiore* … teaches that a dispute is a

colorable claim for benefits under ERISA when its resolution depends on an interpretation of the

terms of an ERISA-governed … plan; that is, when, in order to determine whether the plaintiff is

entitled to relief, the court must look to the terms of the … plan[ ] itself.").

Amount-of-payment claims, on the other hand, are those "regarding the computation of contract payments or the correct execution of such payments," and are typically construed as falling outside of Section 502's purview. *Montefiore*, 642 F.3d at 331. A court will classify a plaintiff's claims as amount-of-payment claims "where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the [ERISA-governed benefit plan]." *Id.* Amount-of-payment claims often "depend on extrinsic sources used for the calculation, and are commonly tied to the rate schedules and arrangements included in provider agreements." *Neuroaxis*, 2014 WL 4840807, at *4 (citing *Montefiore*, 642 F.3d at 331; *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530-31 (5th Cir. 2009)). "The need to reference plan language does not turn an amount of payment claim into a right to payment claim unless the meaning of the plan language is disputed and requires the Court's interpretation." *Id.* (citing *Lone Star*, 579 F.3d at 530-31).

United argues that this is a right-to-payment dispute because Plaintiff's underlying right to reimbursement flows exclusively from the assigned insurance plans, at least some of which are apparently governed by ERISA, and Plaintiff has no independent contractual relationship with United. (*See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand, dated September 14, 2015 ("Def. Mem.") (Dkt. 24-2) at 7-9). United argues that "all of the cases [Plaintiff] cites on this point stand for the proposition that where an <u>in-network provider</u> asserts claims regarding his rights under an independent participating provider agreement not governed by ERISA, those claims are not preempted." (*Id.* at 8) (emphasis in original). According to United, because Plaintiff and United have no independent contractual relationship, "[i]t therefore follows that any 'right to payment,' or even 'amount of payment' allegedly due under the patients'

respective health plans, can only be determined by interpretation of the plans themselves." (*Id.* at 9).

In analyzing the "right to payment" / "amount of payment" dichotomy, courts often consider independent agreements (*i.e*., in-network provider contracts, settlement agreements) because they are relevant to the question of whether or not the court must interpret contested terms of an ERISA-governed plan to resolve a dispute. *See Enigma*, 994 F. Supp. 2d at 301 (plaintiff's claims preempted where "the parties do not disagree about the applicable rate for [plaintiff's] services" and resolving the dispute "requires interpretation of the terms of the ERISA plan"); *North Shore-Long Island Jewish Health Systems, Inc. v. Multiplan, Inc.*, No. 12-cv-1633, 2012 WL 9391428, at \*9 (E.D.N.Y. Nov. 8, 2012), *report and recommendation modified*, 953 F. Supp. 2d 419 (E.D.N.Y. 2013) (recommending that district judge remand to state court where "the Court need not interpret the Plan to resolve the disputes"); *Neuroaxis*, 2012 WL 4840807, at \*4 (plaintiff's claims preempted where one of claims required court to "look to the plan to determine [meaning of] 'medical necessity' and … whether it encompasses the need for an assistant surgeon with respect to the billed procedures"); *Olchovy*, 2011 WL 4916891, at \*4-5 (plaintiff's claims not preempted where they were based on terms of independent settlement agreement and interpretation of ERISA-governed plan was unnecessary); *Lone Star*, 579 F.3d at 530 (plaintiff's claims not preempted where "determination of the rate that [defendant] owes [plaintiff] under the Provider Agreement does not require any kind of benefit determination under the ERISA plan"). The absence of a separate written agreement between Plaintiff and United concerning reimbursement may affect Plaintiff's right to challenge United's reliance on the Fair Database UCR, but does not on its own require a characterization of this case as a "right to payment" dispute subject to ERISA preemption.

Plaintiff alleges that United's insurance plans "typically [provide for partial reimbursement of out-of-network doctors at a rate of] anywhere from 60-90% of the [UCR]." (Compl. ¶ 20). United correctly points out that a court may eventually need to review member plans "to determine whether the patient/Member's plan even provides for out-of-network benefits at all" and "to determine what specific percentage of UCR is required to be paid on each claim." (Def. Mem. at 10). But these are not the things that Plaintiff is disputing, and "[t]he need to reference plan language does not turn an amount of payment claim into a right to payment claim unless the meaning of the plan language is disputed and requires the Court's interpretation." *Neuroaxis*, 2014 WL 4840807, at *4 (citing *Lone Star*, 579 F.3d at 530-31).

Plaintiff contends that the Fair Database UCR for the Gastric Band Procedure is arbitrary and artificially low, and that United is referring to that UCR as a basis for reimbursement calculation to his detriment. Plaintiff does not allege that United failed to pay the percentage of the UCR specified in any of the assigned member plans, or breached any other terms of those plans; rather, he alleges that the Fair Database UCR is an incorrect and artificially low reference point. Whether Plaintiff is correct or not turns on the methodology that Fair Health, Inc. (which Plaintiff did not sue) utilized to arrive at that UCR; a determination does not depend upon the terms of any ERISA-governed insurance agreements assigned to him. Therefore, this is an amount-of-payment rather than a right-to-payment dispute, and Plaintiff's claims are not ERISA § 502(a)(1)(B) claims under *Montefiore*.[2]

---

[2] In light of the fact that Plaintiff's claims implicate the "amount of payment" and are not colorable claims under ERISA § 502(a)(1)(B), they are not preempted, and the Court need not proceed to the second prong of the *Davila* analysis. *See Montefiore*, 642 F.3d at 332.

**III.    CONCLUSION**

       For the foregoing reasons, Plaintiff's motion to remand is granted.  The Clerk of the

Court is directed to remand this case to the Supreme Court of the State of New York, County of

Nassau.

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: May 2, 2016
       Central Islip, New York